**UNLIMITED CARE, INC., Plaintiff,**

v.

**VISITING NURSE ASSOCIATION OF EASTERN MASSACHUSETTS, INC., Defendant.**

No. 98 Civ. 2419 (WCC).

United States District Court, S.D. New York.

March 31, 1999.

Roosevelt & Arfa, LLP, White Plains, NY (Leonard Benowich, of counsel), for plaintiff.

Law Offices of Adam Chu, Boston, MA (Adam Chu, of counsel), for defendant.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

In this diversity action, plaintiff Unlimited Care, Inc. ("UCI") alleges that defendant Visiting Nurse Association of Eastern Massachusetts, Inc. ("VNA"), has breached its services agreements with UCI's wholly owned subsidiary by failing to tender payment for services rendered. Defendant moves to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue. In the alternative, defendant moves to dismiss on the ground of *forum non conveniens*. Plaintiff requested that, in the event the Court found that it lacked jurisdiction, the action be transferred pursuant to 28 U.S.C. § 1404(a) or § 1406(a) rather than dismissed. For the reasons discussed below, the action is hereby transferred to the District of Massachusetts.

### BACKGROUND

The following facts are undisputed except as otherwise noted. Plaintiff UCI is a corporation organized and existing under the laws of the State of New York, with its principal place of business in White Plains, New York. It is a provider of home health care professional services. Defendant VNA is a Massachusetts nonprofit corporation with its principal and only place of business in Somerville, Massachusetts.

In 1995, VNA entered into a Professional Services Agreement (the "Agreement") with a Massachusetts corporation also named Unlimited Care, Inc. ("UCIM"), with its principal place of business in Boston, Massachusetts. UCIM is a wholly-owned subsidiary of UCI. UCI does not dispute that all contract negotiations took place at UCIM's offices in Boston, Massachusetts. The Agreement was executed by VNA in Massachusetts on May 19, 1995. UCIM then forwarded the agreement to UCI in New York where it was executed by Harriet Smith, as President of UCIM, on June 1, 1995. Under the terms of the Agreement, UCIM agreed to provide the services of home health care professionals to VNA patients in Massachusetts and to invoice VNA for such services on a weekly basis. All services rendered by UCIM pursuant to the Agreement were performed in Massachusetts by employees of UCIM. The only "performance" required of VNA was to compensate UCIM for its services promptly upon receipt of such invoices. The Agreement did not provide an address to which VNA was to

remit payment. All time logs were prepared in UCIM's Boston office and were printed on forms containing the Boston address. All invoices submitted to VNA were printed on forms containing UCIM's Boston address but requested that payment be remitted to UCI in White Plains, New York.[1] VNA complied with this request and mailed its payments to New York.

Plaintiff UCI brought this action in diversity seeking to recover amounts allegedly due and owing under the Agreement. UCI alleges that it is a proper party plaintiff because it is an intended third-party beneficiary of the Agreement, or alternatively, because UCIM assigned all rights to payment under the Agreement to UCI.[2] UCI further alleges that all collection efforts with respect to the alleged delinquent accounts (i.e., telephone calls and correspondence) were made by UCI from its office in White Plains, New York.

## DISCUSSION

### I. *Personal Jurisdiction*

▮ Plaintiff bears the burden of establishing this Court's jurisdiction over the defendant. *See Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). The nature of the plaintiff's obligation, however, "varies depending on the procedural posture of the litigation." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). Prior to discovery, a motion to dismiss pursuant to Rule 12(b)(2) may be defeated if the plaintiff's complaint and affidavits contain sufficient allegations to establish a prima facie showing of jurisdiction. *See id.* Moreover, the court must assume the truth of the plaintiff's factual allegations. *See id.*

▮ In diversity actions, the extent of the Court's personal jurisdiction is governed by New York law, as circumscribed by the Due Process Clause of the United States Constitution. *See, Metropolitan Life Ins.*, 84 F.3d at 567; *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963). UCI asserts jurisdiction over VNA on the basis of § 302(a)(1) of New York's Long Arm Statute. N.Y.C.P.L.R. § 302(a)(1). This section provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent transacts any business within the state," and the cause of action arises therefrom. As interpreted by the New York Court of Appeals, the exercise of jurisdiction under this provision will comport with the due process guarantees only if " 'the defendant purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.' " *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 38 (1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); *accord Cut-Co Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

▮ To determine whether a party in a contract action has "transacted business" within the meaning of § 302(a)(1), courts

---

1. UCI claims that it "routinely sent its invoices for payment from [its] offices in White Plains, New York." (Phillips Aff. ¶ 2). VNA disputes this fact and affirms that all "bills were prepared and mailed from [UCIM's] Boston, Massachusetts office." (Cornell Aff. ¶ 12). On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), we must "construe the pleadings and affidavits in plaintiff's favor." *P.D.K. Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). Therefore, we will assume that the invoices were mailed from New York.

2. The complaint also alleges that VNA is the successor-in-interest to a similar contract between UCIM and Visiting Nurse and Health Care, an entity which UCI believes was "acquired" by VNA. For purposes of this motion, the Court will not distinguish between these agreements because (1) doing so would unnecessarily complicate matters and neither aid nor alter the Court's legal analysis; and (2) all relevant New York contacts (i.e., communications regarding non-payment) are adequately alleged with respect to the Agreement.

consider, *inter alia,* the following factors: (i) whether the contract was negotiated and executed in New York; (ii) whether the contract contains a New York choice-of-law clause; (iii) whether the contract is to be performed in New York; and (iv) defendant's physical presence in New York, if any, in connection with an ongoing contractual relationship with a New York corporation. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996). The ultimate conclusion should be based on the totality of the circumstances. *See id.*

▇▇▇▇ Applying those factors, it is clear that VNA did not transact business in New York. The Agreement was negotiated by VNA and UCIM in Massachusetts. VNA executed the contract in Massachusetts.[3] At no time was a representative of VNA physically present in New York. Further, the Agreement contains a choice-law-clause that provides: "XVIII. APPLICABLE LAW: This Agreement shall be governed by and construed under the laws of the Commonwealth of Massachusetts." All services to be rendered by UCIM were to be rendered in Massachusetts by employees of UCIM. VNA is obligated, under the terms of the Agreement, to render payment to UCIM upon receipt of invoices which UCIM is to provide on a weekly basis. Nothing in the Agreement contractually obligates VNA to remit its payments to UCI in New York. Indeed, there is absolutely no mention of UCI in the Agreement. Certainly, the Agreement does not contemplate any form of on-going contractual relationship between VNA and a New York corporation (i.e., UCI).

Plaintiff contends that VNA transacted business in New York by virtue of the following: (1) VNA mailed payments due under the Agreement to UCI in New York; (2) VNA made promises to pay outstanding balances while speaking by telephone with UCI employees who were lo-

cated in New York; and (3) as a result of these contacts, VNA was aware that it was engaged in an on-going business relationship with a New York corporation.

▇▇▇▇ Assuming the truth of all such jurisdictional averments, defendant's conduct does not constitute the transaction of business in New York within the meaning of C.P.L.R. § 302(a)(1). The consensual (but not contractually required) mailing of payments to UCI in New York, standing alone, does not convey jurisdiction over VNA. *See, e.g., Roper Starch Worldwide, Inc. v. Reymer & Assoc., Inc.,* 2 F.Supp.2d 470, 475 (S.D.N.Y.1998) ("merely sending payment to New York is not sufficient to establish personal jurisdiction over a defendant"); *Continental Field Service Corp. v. ITEC Intern., Inc.,* 894 F.Supp. 151, 154 (S.D.N.Y.1995) ("this passive accommodation does not establish the requisite purposeful activity to justify jurisdiction"); *Colson Services Corp. v. Bank of Baltimore,* 712 F.Supp. 28, 31 (S.D.N.Y.1989) (wiring of funds to New York at plaintiff's request is insufficient to establish jurisdiction).

Even if VNA were somehow contractually obligated to send the payments to New York (i.e., if VNA's mailing of payments to New York constituted an acceptance of UCIM's proposed modification or addition to the Agreement), this "performance" of the contract alone would still fall short of the constitutional requirements for personal jurisdiction. *See Transatlantic Shiffahrtskontor GmBh v. Shanghai Foreign Trade Corp.,* 996 F.Supp. 326, 335 (S.D.N.Y.1998) ("the requirement that freight payments be made to another party's New York bank account does not provide an adequate basis for personal jurisdiction"), *recons. granted, motion to dismiss denied on other grounds,* No. 96 Civ. 2893(MGC), 1998 WL 799671 (S.D.N.Y. Nov.17, 1998); *First City Fed. Sav. Bank v. Dennis,* 680 F.Supp.

---

**3.** The fact that UCIM unilaterally chose to forward the contract to Ms. Smith for execution in New York is not sufficient to confer

jurisdiction. *See Presidential Realty Corp. v. Michael Square West, Ltd.,* 44 N.Y.2d 672, 376 N.E.2d 198, 405 N.Y.S.2d 37 (1978).

579, 584 (S.D.N.Y.1988) ("It is well-settled that the mere designation of New York as the site for payment on a promissory note is insufficient to confer jurisdiction over a nonresident defendant") (citation and quotation omitted); *accord Lancaster v. Zufle,* 165 F.R.D. 38, 40–41 (S.D.N.Y.1996) (finding jurisdiction under § 302(1)(a) only where contract also contained New York choice of law clause and defendant had an agent and bank account in New York).

 Further, it appears from the facts that all of VNA's telephone contacts with UCI were initiated by UCI. UCI alleges that all of its collection activities took place in New York and that, in the course of telephone conversations with representatives of VNA in furtherance of these collection efforts, VNA orally promised to send payments to New York. First, it should be noted that "a plaintiff's New York activities relating to the contract cannot be imputed to the defendant for jurisdictional purposes." *See Worldwide Futgol Assoc., Inc. v. Event Entertainment, Inc.,* 983 F.Supp. 173, 177 (E.D.N.Y.1997). Without question, VNA did not actively project itself into New York by virtue of its receiving telephone calls originated by New York employees of UCI. *See Continental Field Service,* 894 F.Supp. at 154 (correspondence in response to inquiry by New York corporation regarding non-payment issues does not indicate "purposeful availment of benefits and obligations of transacting business in New York").

 Finally, we find plaintiff's argument that VNA knowingly engaged in an ongoing contractual relationship with a New York corporation, namely UCI, to be without merit. There is no indication that VNA was ever aware that it was dealing with a corporation other than UCIM. The only party to the Agreement is UCIM and the Agreement provided that "All notices and other communications under this Agreement shall be given in writing ... to Unlimited Care, Inc., Attn.: Anna Leone–Moore, 71 Summer Street, Boston, Massachusetts 02110." Both parent and subsidiary (UCI and UCIM) share the name Unlimited Care, Inc.; therefore, VNA could easily have assumed that the New York office seeking payment of accounts receivable was merely a branch of the Massachusetts corporation handling accounting and collection matters. Even viewing the corporate interactions in a light most favorable to plaintiff, "we find that VNA's purported knowledge of [UCI's] physical presence in New York does not establish the purposeful availment of the laws of New York necessary for jurisdiction." *Continental Field Service,* 894 F.Supp. at 154.

The totality of VNA's alleged acts simply do not translate into jurisdictional contacts sufficient to constitute the transaction of business in New York. *See Roper Starch Worldwide,* 2 F.Supp.2d at 474 (no personal jurisdiction under § 302(a)(1) where contract negotiated outside New York and no New York choice of law clause, even though payments sent to New York and parties corresponded by telephone, facsimile and mail); *Continental Field Service,* 894 F.Supp. at 153–54 (defendant not transacting business pursuant to § 302(a)(1) where contract negotiated outside New York and no physical presence in New York even though payments wired to parent company in New York and defendant corresponded with New York corporation in attempt to resolve nonpayment problem). Accordingly, this Court does not have personal jurisdiction over VNA for purposes of the instant action. The Court therefore need not consider whether venue is properly laid in this district under 28 U.S.C. § 1391(a).

## II. *Transfer of Action*

Plaintiff has requested that, in the event this Court determines that it lacks personal jurisdiction over the defendant, rather than dismiss the action, this Court transfer the action to the District of Massachusetts, pursuant to 28 U.S.C. § 1404(a) or § 1406(a). *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought" even if venue was proper in the original district); 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought").

■ A transfer may be made under 28 U.S.C. § 1404(a) or § 1406(a) upon motion by either party or by the court sua sponte. *See Lead Industries Ass'n, Inc. v. Occupational Safety and Health Admin.*, 610 F.2d 70, 79 n. 17 (2d Cir.1979) ("The broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer sua sponte"); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371–72 n. 3 (2d Cir.1966) ("where the motion asks only that the suit be dismissed, the court may properly, sua sponte, order it transferred [pursuant to 28 U.S.C. § 1406(a) ]").[4]

■ The Court is authorized to transfer a case to a district where venue is proper, notwithstanding its lack of personal jurisdiction over the defendant. *See Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 78–80 (2d Cir.1978) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)). Further, "when transferring a case in the interest of justice based on the lack of personal jurisdiction, a court need not elect between reliance on 28 U.S.C. § 1404(a) and

§ 1406(a)." *Worldwide Futgol Assoc.*, 983 F.Supp. at 182; *see Corke*, 572 F.2d at 80; *Troyer v. Karcagi*, 488 F.Supp. 1200, 1206–07 (S.D.N.Y.1980) ("taken together the statutes confer authority to transfer the suit whether or not venue is properly laid in [the transferor] district").

■ Plaintiff asserts that "[a]ll the records necessary to this action are located in White Plains, and plaintiff's witnesses ... are located here," arguing by implication that transferring the case to the Massachusetts forum would be inconvenient to the parties and witness and, therefore, not in the interest of justice. (Phillips Aff. ¶ 8). This argument is unpersuasive, however, because: (1) the alternative is outright dismissal of the action; (2) plaintiff requested the transfer in lieu of dismissal; and (3) the lack of personal jurisdiction over VNA justifies the transfer of this action to the District of Massachusetts.

■ A court electing to transfer an action, may only transfer such action "to a district where it might have been brought initially," (i.e., a district where defendant is subject to personal jurisdiction and venue would be proper). *Volkswagen De Mexico, S.A. v. Germanischer Lloyd*, 768 F.Supp. 1023, 1028 (S.D.N.Y.1991). In this case, the interest of justice would be served by transferring the action to the District of Massachusetts. The District Court for the District of Massachusetts possesses personal jurisdiction over VNA, and venue properly lies in that district. *See* 28 U.S.C. § 1391(a)(1) and (2).[5] More-

---

**4.** According to *Mobil Corp. v. S.E.C.*, 550 F.Supp. 67, 69 (S.D.N.Y.1982), parties should be provided notice and an opportunity to be heard when transfer is proposed sua sponte by the court. Here, the issue of venue has been raised and briefed by the parties, and plaintiff has requested a transfer in lieu of dismissal. Defendant had an opportunity to object to this request in its reply papers. We therefore do not deem it necessary to solicit further arguments from the parties regarding whether transfer of venue is appropriate.

**5.** Venue would be proper in Massachusetts pursuant 28 U.S.C. § 1391(a), which provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred....

Here, the sole defendant resides in Massachusetts and a substantial part of the events giving rise to plaintiff's claim occurred in Massachusetts.

over, the Agreement is governed by the law of Massachusetts. Thus, the federal forum most familiar with the state law governing the contract would preside over the matter. Finally, the Court finds that dismissal would be disproportionate to the harm or inconvenience which plaintiff has caused defendant. Accordingly, in the interest of justice, we order that this case be transferred to the District of Massachusetts, where it could have (and should have) initially been brought.

## CONCLUSION

For the foregoing reasons, this action shall be transferred to the District of Massachusetts pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). Pursuant to Local Civil Rule 83.1, the Clerk shall, upon expiration of five (5) days, mail to the Clerk for the District of Massachusetts: (i) certified copies of this Opinion and Order; (ii) certified copies of the docket entries in this case; and (iii) the originals of all other documents on file in this case.

SO ORDERED.